1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GREGORY CARTER,

11          Petitioner,              No. CIV S-02-0126 RRB JFM P

12       vs.

13   DAVE RUNNELS, et al.,

14          Respondents.         FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1991 conviction on

18   charges of kidnapping, forcible oral copulation in concert, and rape in concert, enhanced by

19   findings of personal use of a deadly weapon in connection with several of the counts and a

20   finding that petitioner was armed with a deadly weapon in connection with one of the rape in

21   concert counts.  Petitioner claims that he received constitutionally ineffective assistance of trial

22   and appellate counsel.  Petitioner also claims that his constitutional rights were violated by the

23   trial court's improper limitation of the cross-examination of one witness and the trial court's

24   improper instruction regarding the testimony of another.

25   /////

26   /////

1

1                                 PROCEDURAL BACKGROUND

2              Petitioner filed this action on January 15, 2002.[1]  On  March 19, 2002,

3   respondents moved to dismiss this action as barred by the statute of limitations.  By order filed

4   January 3, 2003, the parties were granted a period of ninety days to conduct discovery related to

5   the statute of limitations issues raised in respondents' motion to dismiss and respondents' initial

6   motion to dismiss was denied without prejudice.

7              On May 2, 2003, respondents renewed their motion to dismiss.  On September 19,

8   2003, this court issued findings and recommendations recommending that respondents' motion

9   be granted and this action be dismissed as time-barred.  Petitioner filed objections to the findings

10  and recommendations, and by order filed October 17, 2003, this court vacated the findings and

11  recommendations and granted the parties a period of twenty days to file supplemental briefing on

12  whether petitioner was entitled to equitable tolling of the limitations period.

13             Thereafter, on December 18, 2003, this court again recommended that

14  respondents' motion to dismiss be granted and this action be dismissed as time-barred.  Petitioner

15  filed objections to the findings and recommendations.  On March 3, 2004, the district court

16  declined to adopt the findings and recommendations and denied respondents' motion to dismiss.

17  On March 11, 2004, the district court denied respondents' motion for reconsideration of the

18  March 11, 2004 order.  On April 2, 2004, respondents filed an interlocutory appeal from the

19  district court's denial of their motion to dismiss.

20             On October 25, 2004, the United States Court of Appeals for the Ninth Circuit

21  dismissed respondents' appeal.  Thereafter, this court set a briefing schedule for an answer and a

22  traverse.  In their answer, in addition to responding to the merits of petitioner's claims,

23  /////

24  _____

25       [1]  At the time this action was filed, petitioner was represented by counsel.  On March 20,
    2007, petitioner filed notice of the death of his attorney and requested that he represent himself
    for the remainder of these proceedings.  By order filed June 13, 2007, the court directed that
26  petitioner would henceforth proceed in propria persona.

1   respondents again raise the statute of limitations defense.  The defense has been resolved against

2   them by the district court and will not be addressed in these findings and recommendations.

3                                                FACTS[2]

4          On the evening of February 18, 1991, [petitioner] and Sims
        abducted [the] 16-year-old victim from a Lucky's grocery store
5        parking lot on Stockton Boulevard in Sacramento County.  They
        drove [the victim] to the home of [petitioner]'s girlfriend, Tina
6        Johnson.  While there, [petitioner] and Sims repeatedly forced [the
        victim] to orally copulate them and Johnson.  Sims also raped her.
7
           Later, [petitioner], Sims and [the victim] left Johnson's house
8        and drove to San Francisco.  After attempting to sell the victim to
        some men, [petitioner] and Sims took her to the home of
9        [petitioner]'s father in Oakland.  [Petitioner] raped the victim on
        the living room sofa.  Sometime later, [the victim] and her
10       abductors drove to a McDonald's restaurant.  While [petitioner]
        was inside the McDonald's and Sims was otherwise occupied, [the
11       victim] escaped out of the back window of the car.  [The victim]
        was given refuge at a nearby auto repair shop.
12
           On March 6, 1991, [petitioner] was found hiding in a closet in
13       one of Johnson's bedrooms and was arrested.  Initially, [petitioner]
        told Detective Richard Carlson that [petitioner] had nothing to do
14       with the sexual assaults on [the victim], but he changed his
        statement subsequently and claimed [the victim] orally copulated
15       him voluntarily.  At first [petitioner] admitted forcing [the victim]
        to engage in an act of oral copulation with Johnson, but he
16       retracted this statement also and claimed Johnson "did it out of
        love for him" and [the victim] did it because Sims paid her.
17       [Petitioner] denied every having sexual intercourse with [the
        victim].  He claimed his father lived in San Diego and he had not
18       seen him in eight years.  [Petitioner] explained he hid in Johnson's
        closet because he thought there was a warrant out for his arrest for
19       "peeing in public."

20          At trial, [petitioner]'s father testified that [petitioner], another
        man and a young Caucasian woman came to his house in Oakland
21       at approximately 3:30 a.m. on February 19, 1991.  [Petitioner]
        admitted he lied to Detective Carlson regarding his father living in
22       San Diego, not having seen his father in eight years and not having
        sexual intercourse with [the victim].  [Petitioner] testified that [the
23       victim] orally copulated him and had sexual intercourse with him
        voluntarily.  He claimed she jumped out of the car at the
24

25          [2]  The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in People v. Carter, No. C012126 (Sept. 21, 1992), a copy of which is attached
26   as Exhibit D to Respondents' Motion to Dismiss filed March 19, 2002.

1  McDonald's restaurant for no apparent reason.  [Petitioner]
2  admitted he had a prior felony conviction for spousal abuse.

3  People v. Carter, slip op. at 2-4.

4  ANALYSIS

5  I.  Standards for a Writ of Habeas Corpus

6  Federal habeas corpus relief is not available for any claim decided on the merits in

7  state court proceedings unless the state court's adjudication of the claim:

8  (1) resulted in a decision that was contrary to, or involved an
   unreasonable application of, clearly established Federal law, as
9  determined by the Supreme Court of the United States; or

10 (2) resulted in a decision that was based on an unreasonable
   determination of the facts in light of the evidence presented in the
11 State court proceeding.

12 28 U.S.C. § 2254(d).

13 Under section 2254(d)(1), a state court decision is "contrary to" clearly

14 established United States Supreme Court precedents if it applies a rule that contradicts the

15 governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

16 indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

17 result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

18 (2000)).

19 Under the  "unreasonable application" clause of section 2254(d)(1), a federal

20 habeas court may grant the writ if the state court identifies the correct governing legal principle

21 from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

22 prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

23 simply because that court concludes in its independent judgment that the relevant state-court

24 decision applied clearly established federal law erroneously or incorrectly.  Rather, that

25 application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

26 /////

4

1   123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

2   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

3           The court looks to the last reasoned state court decision as the basis for the state

4   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

5   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

6   habeas court independently reviews the record to determine whether habeas corpus relief is

7   available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

8   II.  Petitioner's Claims

9           A.   Ineffective Assistance of Counsel

10          Petitioner's first claim for relief is that he received constitutionally ineffective

11  assistance from his trial and his appellate counsel.  Specifically, he claims that his trial counsel

12  was ineffective in failing to request the trial court to modify a jury instruction providing that the

13  testimony of Tina Johnson should be regarded with caution, and for questioning petitioner at trial

14  about his previous conviction for spousal abuse.  He claims that his appellate counsel was

15  ineffective in failing to challenge on direct appeal the trial court's decision to grant the

16  prosecutor's request to prevent the defense from cross-examining the victim about her drug

17  usage.

18          The last reasoned state court rejection of these claims is the November 9, 2000

19  decision of the Sacramento County Superior Court denying petitioner's application for a writ of

20  habeas corpus.  After rejecting the first claim as  untimely, the superior court went on to find that

21          [i]n any event, petitioner fails to state a prima facie claim for relief.
            (In re Bower (1985) 38 Cal.3d 865).  As made clear in the Third
22          District Court of Appeal opinion in the case, Tina Johnson was
            called as a prosecution witness, thus the instruction was properly
23          given, and in any event, if there was error in giving the instruction
            as it was given, it was harmless (see People v. Williams (1988) 45
24          Cal.3d 1268, 1314).

25  Ex. G to Motion to Dismiss, In re Gregory James Carter, No. 00F08946 (Nov. 9, 2000), slip op.

26  at 3.  The superior court found that petitioner's second claim of ineffective assistance of trial

1  counsel was also time-barred.  Id. The court also rejected the claim for failure to state a prima

2  facie claim for relief, finding that petitioner had made "no showing that he would not have been

3  subject to impeachment by the prior, which was a crime of moral turpitude with which he could

4  have been impeached [citation omitted], or that asking petitioner directly about the conviction

5  was not a tactical choice by counsel not amounting to ineffective assistance of counsel [citation

6  omitted]." Id.  The court also found petitioner had not shown that the outcome of his trial would

7  have been different in the absence of the challenged questioning.  Id.

8          Similarly, the superior court found that petitioner's claim of ineffective assistance

9  of appellate counsel was also time-barred and that petitioner had failed to state a prima facie

10  claim for relief because he had failed to show how the trial court's ruling was error, failed to cite

11  legal authority to support his claim, and failed to show how any alleged error would have led to a

12  reversal of his conviction on appeal.  Id. at 3-4.

13          The United States Supreme Court set forth the test for demonstrating ineffective

14  assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must

15  show that, considering all the circumstances, counsel's performance fell below an objective

16  standard of reasonableness.  Strickland, 466 U.S. at 688.  To this end, petitioner must identify the

17  acts or omissions that are alleged not to have been the result of reasonable professional judgment.

18  Id. at 690.  The court must then determine whether in light of all the circumstances, the identified

19  acts or omissions were outside the wide range of professional competent assistance.  Id.  "We

20  strongly presume that counsel's conduct was within the wide range of reasonable assistance, and

21  that he exercised acceptable professional judgment in all significant decisions made."  Hughes v.

22  Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

23          Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

24  693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

25  unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

26  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

1    see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

2    2000).

3                           1.   Failure to Request Modification of Jury Instruction Concerning Tina Johnson's

4    Testimony

5                   Petitioner's first contention is that his trial counsel provided ineffective assistance

6    by failing to request modification of a jury instruction given concerning Tina Johnson's

7    testimony.  The state court of appeal addressed petitioner's challenge to the jury instruction as

8    follows:

9                   [Petitioner] contends the court erred in giving certain
                    accomplice instructions (CALJIC Nos. 3.18 and 3.19) because both
10                  [petitioner] and Johnson testified favorably to the defense.  He
                    claims that, under the circumstances, it was prejudicial error to
11                  instruct the jury to view the testimony of an accomplice with
                    distrust.[3]

12
                    Where an accomplice is called as a witness by the prosecution,
13                  the court must instruct sua sponte with CALJIC No. 3.18,
                    informing the jury that an accomplice's testimony should be
14                  viewed with distrust.  [Citations omitted.]  However, when an
                    accomplice is called as a witness by the defendant, the instruction
15                  should not be given unless requested by the defendant.  [Citations
                    omitted.]  If both parties call an accomplice, the instruction must
16                  be restricted to prosecution witnesses only.  [Citations omitted.]

17                  In the present case, Johnson was called as a witness for the
                    prosecution due to her inculpatory pretrial statements regarding
18                  [petitioner] forcing [the victim] to engage in acts of oral copulation
                    with Johnson.  Yet, from other evidence at trial, the jury could
19                  have found Johnson was an accomplice and had incriminated
                    [petitioner] to protect herself.  Hence, the court was required to
20                  give the accomplice instructions in question for [petitioner]'s
                    protection.  [Citations omitted.]

21

22    _____

23        [3]  The court instructed the jury in the language of CALJIC No. 3.18 as follows:  "The
      testimony of an accomplice ought to be viewed with distrust.  This does not mean that you may
24    arbitrarily disregard such testimony, but you should give to it the weight to which you find it to
      be entitled after examining it with care and caution and in the light of all the evidence in the
25    case."  The court also gave the following version of CALJIC No. 3.19:  "You must determine
      whether the witness, Tina Johnson, was an accomplice as I have defined that term.  [¶]  The
26    [petitioner] has the burden of proving by a preponderance of the evidence that Tina Johnson was
      an accomplice in the crimes charged against the [petitioner]."

1    "[C]ontrary to the general rule that a jury instruction may be
2    challenged on appeal even though no objection was raised at trial,
     an objection to a cautionary instruction has been required before
3    the defendant may assert error on appeal because a defendant 'may
     not sit silently during the course of his trial; create a situation
4    which may be to his advantage or disadvantage and require the
     court to make an election on his behalf without being bound by that
5    election.'" (People v. Toro (1989) 47 Cal.3d 966, 975, citations
     omitted.)

6        Apparently, [petitioner] also believes CALJIC No. 3.18 should
7    not have been given because the jury may have been led to believe
     his own testimony should be viewed with distrust if the jury found
8    he was Sims's accomplice. However, CALJIC No. 3.19 apprised
     the jury that it had to determine whether Tina Johnson was an
9    accomplice. This indicated the remaining accomplice instructions
     applied to Johnson, if the jury found she was an accomplice. If
10   [petitioner] believed more clarification was necessary, he should
     have requested such clarification from the trial court. [Citation
11   omitted.]

12       Even assuming the court erred in failing to expressly limit the
     application of CALJIC No. 3.18 to Johnson's testimony, the error
13   is harmless. Other proper instructions given by the country called
     [petitioner]'s credibility into question. The jury was advised it
14   could consider a witness's prior conviction of a felony, his
     admission of untruthfulness, and his prior inconsistent statements
15   in assessing his credibility. (CALJIC Nos. 2.20 and 2.23.) The
     jury was instructed further that a witness wilfully false in one
16   material part of his testimony was to be distrusted in others.
     (CALJIC No. 2.21.2.) In addition, [petitioner]'s claim that the
17   victim jumped out of the car for no apparent reason was inherently
     implausible and cast formidable doubt upon his version of the
18   events of that evening. It is highly unlikely that the victim would
     have jumped out of the car window, leaving her car with two men
19   she had just met and causing herself to be stranded miles away
     from the city in which she lived, unless she felt it necessary to
20   escape from [petitioner] and Sims for her personal safety.

21       Under the circumstances, even if the jury inexplicably believed
     the accomplice instructions applied to [petitioner], the admonition
22   to distrust the testimony of an accomplice did little to weaken
     [petitioner]'s already damaged credibility. Our review discloses it
23   is not reasonably probable a result more favorable to [petitioner]
     would have resulted if the court had not given the accomplice
24   instructions.

25  People v. Carter, slip op. at 22-24.

26  /////

1        Petitioner claims that counsel provided ineffective assistance by not requesting

2   that CALJIC 3.18 be tailored to limit its application to Tina Johnson's testimony for the

3   prosecution.  Except as she was impeached by her inconsistent statements to a detective, Tina

4   Johnson's direct testimony for the prosecution was supportive of petitioner.  She testified, inter

5   alia, that during the events at her house the victim smoked drugs.  Reporter's Transcript of

6   Proceedings, Volume III (RTIII) at 681.  She testified that she refused to allow the victim to

7   orally copulate her.  RTIII at 684-685.  She testified that she never saw petitioner either threaten

8   the victim or instruct her to orally copulate Johnson.  RTIII at 685.  She testified that the victim

9   appeared a little intoxicated and stoned.  RTIII at 685-686.  She testified that she never saw the

10  victim orally copulate petitioner.  RTIII at 686.  She explained her prior inconsistent statements

11  to a detective by saying she was "upset and nervous" at the time and concerned that her children

12  would be taken to a foster home.  RTIII at 693-695.

13        This court finds that petitioner would not have gained any benefit from an

14  instruction limiting the application of CALJIC 3.18 to Johnson's testimony for the prosecution.

15  An instruction to the jury to view that part of Johnson's testimony with distrust would in no way

16  have aided petitioner.  For this reason, this court finds that counsel's failure to request that the

17  application of CALJIC 3.18 be limited to Johnson's testimony for the prosecution was neither

18  ineffective nor prejudicial.  The state court's rejection of this claim was neither contrary to nor an

19  unreasonable application of clearly established federal law.  This claim for relief should be

20  denied.

21                 2. Questioning Petitioner Concerning His Prior Conviction for Spousal Abuse

22        Petitioner contends that his trial counsel provided ineffective assistance when he

23  questioned petitioner concerning his prior conviction for spousal abuse.  As noted above, the

24  state court rejected this claim on the ground, inter alia, that petitioner had made no showing that

25  he would not have been subject to impeachment by the prior.

26  /////

1    The record reflects that prior to the start of trial the court ruled that petitioner

2 could be impeached by his prior conviction for spousal abuse if he chose to testify.  Reporter's

3 Transcript of Proceedings, Volume I (RTI), at 6-8.  Counsel was not ineffective in raising the

4 prior conviction during petitioner's direct testimony.  See Boyde v. Brown, 404 F.3d 1159, 1174

5 (9th Cir. 2005) (defendant's counsel's decision to ask defendant about prior convictions during

6 direct testimony "is precisely the sort of tactical decision that counsel is expected to make at

7 trial.")  The state court's rejection of this claim was neither contrary to nor an unreasonable

8 application of applicable principles of federal law.  This claim for relief should be denied.

9         3.  Ineffective Assistance of Appellate Counsel

10        Petitioner's final contention of ineffective assistance of counsel is that his

11 appellate counsel was ineffective in failing to challenge on direct appeal limitations placed by the

12 trial court on cross-examination of the victim concerning her drug use.

13        Prior to the start of trial, the prosecution made a motion in limine to preclude the

14 defense from questioning the victim about her drug usage prior to the events at bar.  RTI at 26.

15 The trial court granted the motion.  Id. at 29.  In so ruling, the court held that the victim could be

16 questioned about any drug use during the events at bar, including, as appropriate, how the victim

17 knew what drug(s) she had taken during the incident.  Id. at 29-30.  Petitioner did not challenging

18 this ruling on direct appeal.

19        Petitioner has made no showing that trial court's ruling was erroneous, or that the

20 outcome of his direct appeal would have been different had counsel challenged the ruling on

21 appeal.  The state court's rejection of this claim was neither contrary to nor an unreasonable

22 application of applicable principles of federal law.  This claim for relief should be denied.

23     B.  Limitation on Cross-Examination of Victim

24        Petitioner's second claim for relief is that his right to a fair trial was violated by

25 the trial court's limitation on the cross-examination of the victim concerning her prior drug

26 usage.  See Section IIA3, supra.  Petitioner contends that his defense was that the victim "had

1  consensual sex with petitioner, and that she asked to do sexual favors in exchange for the drugs."

2  Petition, at 11.  Petitioner raised this claim in a petition for writ of habeas corpus to the

3  California Court of Appeal for the Third Appellate District.  See Ex. H to Motion to Dismiss.

4  The petition was denied by an order that contains no statement of reasons for the decision.  See

5  Ex. I to Motion to Dismiss.[4]

6          As noted in section IIA3, supra, the trial court granted the prosecutor's motion in

7  limine to preclude questioning of the victim about any drug usage prior to the events at bar.  RTI

8  at 26-29.  The trial court did not preclude the defense from asking the victim about any drug use

9  during the events at bar, including, as appropriate, how the victim knew what drug(s) she had

10  taken during the incident.  Id. at 29-30.  The court did, however, find that any inquiry about prior

11  drug usage by the victim would not be relevant.  Specifically, the court stated:

12          [I]t's going to create several additional issues for this trial which
          don't need to be delved into.  The question is the guilt or innocence
13          of these defendants as far as these charges are concerned, and to
          bring in these side issues, I think, is going to be very time
14          consuming.  It's going to deflect the jury from the issues at hand,
          and I think it could be prejudicial to both the prosecution and the
15          defense because I think it would be the misuse of evidence.  I don't
          believe that fits, if that type of evidence is properly admissible.

16

17  RTI at 29.

18          The Confrontation Clause of the Sixth Amendment provides
          that "[i]n all criminal prosecutions, the accused shall enjoy the
19          right ... to be confronted with the witnesses against him...."  U.S.
          Const. amend. VI. This right, which is incorporated by the
20          Fourteenth Amendment so as to apply to state prosecutions, Pointer
          v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923
21          (1965), "guarantees the defendant [not only] a face-to-face meeting
          with witnesses appearing before the trier of fact," Coy v. Iowa, 487
22          U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), but also
          the right to cross-examine those witnesses.  Pointer, 380 U.S. at
23          404, 406-07, 85 S.Ct. 1065; Douglas v. Alabama, 380 U.S. 415,
          418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) ("[A] primary interest

24

25          [4] In the petition, petitioner represents that he also raised the instant claim in a petition for
   writ of habeas corpus to the California Supreme Court filed May 31, 2001, and that said petition
26  was denied by order filed October 31, 2001.  Petition, at 6.

1    secured by [the Confrontation Clause] is the right of
     cross-examination....”).  Thus, as is relevant here, “a criminal
2    defendant states a violation of the Confrontation Clause by
     showing that he was prohibited from engaging in otherwise
3    appropriate cross-examination designed ... ‘to expose to the jury
     the facts from which jurors ... could appropriately draw inferences
4    relating to the reliability of the witness.’ ” See Delaware v. Van
     Arsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)
5    (quoting Davis v. Alaska, 415 U.S. 308, 318, 94 S.Ct. 1105, 39
     L.Ed.2d 347 (1974)); see also Olden v. Kentucky, 488 U.S. 227,
6    231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam) (quoting
     Van Arsdall, 475 U.S. at 680, 106 S.Ct. 1431).

7

8    Fowler v. Sacramento County Sheriff’s Department, 421 F.3d 1027, 1035 (9th Cir. 2005).

9           Cross-examination “may implicate the Sixth Amendment” when it “bears on the

10   witness’s reliability or credibility.”  Id. at 1036.  In this regard, “it is sufficient that a jury ‘might

11   reasonably’ have questioned the witness’s reliability or credibility in light of the cross-

12   examination.”  Id. (quoting Van Arsdall, 475 U.S. at 679.)  The cross-examination must also,

13   however, “be ‘appropriate’:

14          It does not follow, of course, that the Confrontation Clause of the
            Sixth Amendment prevents a trial judge from imposing any limits
15          on defense counsel’s inquiry into the [reliability or credibility] of a
            prosecution witness. On the contrary, trial judges retain wide
16          latitude insofar as the Confrontation Clause is concerned to impose
            reasonable limits on such cross-examination based on concerns
17          about, among other things, harassment, prejudice, confusion of the
            issues, the witness’ safety, or interrogation that is repetitive or only
18          marginally relevant.  See Van Arsdall, 475 U.S. at 679.

19   Fowler, at 1036-37.  Any constitutional error caused by a limitation on cross-examination must

20   be assessed under the prevailing harmless error test:

21          In a federal habeas proceeding, constitutional error is harmless
            unless it had “ ‘substantial and injurious effect or influence in
22          determining the jury’s verdict.’ ” DePetris v. Kuykendall, 239 F.3d
            1057, 1061 (9th Cir.2001) (quoting Brecht v. Abrahamson, 507
23          U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Relevant
            factors to consider include:  [1] the importance of the witness’
24          testimony in the prosecution’s case, [2] whether the testimony was
            cumulative, [3] the presence or absence of evidence corroborating
25          or contradicting the testimony of the witness on material points, [4]

26   /////

1    the extent of cross-examination otherwise permitted, and, of
     course,[5] the overall strength of the prosecution's case.

2

3  Fowler, at 1041-42 (citing Van Arsdall, 475 U.S. at 684.)

4         After review of the record herein, this court finds no merit to petitioner's

5  contention that the trial court's ruling precluding cross-examination of the victim to inquire about

6  prior drug use violated his Sixth Amendment rights.  The trial court's ruling was well within the

7  "wide latitude" retained by trial courts to keep trials focused on issues relevant to the matters at

8  bar.  Any inquiry about alleged prior drug use by the victim would have had little, if any,

9  relevance to the question of whether petitioner was guilty of the kidnapping and sexual assault

10 charges at issue in the criminal proceedings.  There was no Sixth Amendment violation in the

11 trial court's ruling[5], and no error in the state courts' rejection of this claim.  This claim for relief

12 should be denied.

13        C.  Jury Instruction Concerning Tina Johnson's Testimony

14        Petitioner's final claim is that his right to due process was violated by the trial

15 court's instruction to the jury "that the jury should distrust the testimony of Tina Johnson because

16 she was an accomplice."  Petition, at 12.   Petitioner also claims that the instruction violated due

17 process because it reduced the prosecution's burden of proof.  Id.  Petitioner raised this claim in a

18 petition for writ of habeas corpus to the California Court of Appeal for the Third Appellate

19 District.  See Ex. H to Motion to Dismiss.  The petition was denied by an order that contains no

20 statement of reasons for the decision.  See Ex. I to Motion to Dismiss.[6]

21        The facts relevant to this claim are set forth in section IIA1, supra.  As noted

22 above,

23

---

24     [5] Even if there had been, any such error would have been harmless given the overall
   strength of the prosecution's case and the extensive cross-examination of the victim at trial.

25     [6] In the petition, petitioner represents that he also raised the instant claim in a petition for
   writ of habeas corpus to the California Supreme Court filed May 31, 2001, and that said petition
26 was denied by order filed October 31, 2001.  Petition, at 6.

1          The court instructed the jury in the language of CALJIC No. 3.18
2   as follows: "The testimony of an accomplice ought to be viewed
   with distrust. This does not mean that you may arbitrarily
3   disregard such testimony, but you should give to it the weight to
   which you find it to be entitled after examining it with care and
4   caution and in the light of all the evidence in the case." The court
   also gave the following version of CALJIC No. 3.19: "You must
5   determine whether the witness, Tina Johnson, was an accomplice
   as I have defined that term. [¶] The [petitioner] has the burden of
6   proving by a preponderance of the evidence that Tina Johnson was
   an accomplice in the crimes charged against the [petitioner]."

7   People v. Carter, slip op. at 22 n.4.

8          In general, federal habeas corpus relief is not available for jury instruction error

9   unless the error so infects the entire trial that the resulting conviction violates due process,

10  rendering the trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991); Duckett

11  v. Godinez, 67 F.3d 734, 745-46 (9th Cir. 1995). A federal court must evaluate jury instructions

12  "'in the context of the overall charge to the jury as a component of the entire trial process.'"

13  Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (per curiam) (quoting Bashor v. Risley,

14  730 F.2d 1228, 1239 (9th Cir. 1984)).

15         It is well established that the burden is on the prosecution to prove each and every

16  element of the crime charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364

17  (1970). Due process is violated by jury instructions which use mandatory presumptions to

18  relieve the prosecution's burden of proof on any element of the crime charged. Francis v.

19  Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979). A

20  mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain

21  predicate facts are proved. Francis, 471 U.S. at 314. On the other hand, a permissive

22  presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of

23  a basic fact. County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979). The ultimate

24  test of the constitutionality of a presumption "remains constant: the device must not undermine

25  the factfinder's responsibility at trial, based on evidence adduced by the State, to find the

26  /////

1   ultimate facts beyond a reasonable doubt." Ulster County, 442 U.S. at 156 (citing In re Winship,

2   397 U.S. at 364)).

3          Petitioner mischaracterizes the jury instructions given at his trial.  The trial court

4   did not instruct the jury that Tina Johnson was an accomplice, nor did the court instruct the jury

5   that her testimony should be distrusted.  Rather, the court gave two instructions required by state

6   law based on the evidence presented at trial.  The instructions did not render petitioner's trial

7   fundamentally unfair, nor did they improperly shift the burden of proof to petitioner on any of the

8   elements of the crimes with which he was charges.  The state courts' rejection of this claim was

9   congruent with applicable principles of federal law.  The claim should be denied.

10          In accordance with the above, IT IS HEREBY RECOMMENDED that

11   petitioner's application for a writ of habeas corpus be denied.

12          These findings and recommendations are submitted to the United States District

13   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14   days after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

17   failure to file objections within the specified time may waive the right to appeal the District

18   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19   DATED: February 14, 2008.

20

21                                    _____
                                      UNITED STATES MAGISTRATE JUDGE
22

23   12
     cart0126.157
24

25

26

                                    15